UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO:

Cesar Silva,

    Plaintiff

  v.

Surgery Centre of SW Florida, LLC,
d/b/a Cape Health Surgery Center

    Defendant.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff, CESAR SILVA ("Plaintiff" or "Mr. Silva"), files the following Complaint for Injunctive Relief against Defendant, SURGERY CENTRE OF SW FLORIDA, LLC, d/b/a CAPE HEALTH SURGERY CENTER ("Defendant"), for injunctive relief pursuant to the Americans with Disabilities Act, *42 U.SC. §12181*, *et seq.* ("ADA"), and alleges as follows:

**INTRODUCTION**

1. This discrimination action is brought by Plaintiff, CESAR SILVA – a disabled military veteran who has been denied equal access of public accommodations by Defendant. Title III of the ADA protects the right of a disabled individual to have a service animal in places of public accommodations. Mr. Silva contends that Defendant has violated his rights under the ADA by refusing Mr. Silva and his service dog, Sophia, access to its facilities. When Mr. Silva asked Defendant why Sophia was

1

not allowed in its facilities, Defendant responded that it changed its policies because of COVID-19. This constitutes a failure to accommodate under the ADA. Mr. Silva brings this action pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.*, to obtain injunctive relief, attorneys' fees and litigation costs.

2. On July 26, 1990, Congress enacted the Americans with Disabilities Act (hereinafter "ADA"), and specifically found, *inter alia,* that:

(i) Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) Historically, society has tended to isolate and segregate individuals with disabilities and despite some improvements such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) Discrimination against individuals with disabilities persists in such critical areas of employment;

(iv) The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1)-(3), (5), and (9).

3. Congress explicitly set forth the purpose of the ADA; to wit:

(i) Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) Provide strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    (iii)    Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §§ 12101(b)(1)(2) and (4).

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff, CESAR SILVA, is a resident of Lee County, Florida, over the age of 18 years, and otherwise *sui juris.*

5. Under the ADA, medical centers are places of public accommodations. *42 U.S.C. §12181(7)(F).*

6. Defendant operates a medical and surgical center located at 665 Del Prado Blvd., S., Cape Coral, FL 33990 (the "subject property").

7. The subject property is required to be in compliance with the ADA and is presently in violation of the Act.

8. All acts and/or omissions giving rise to this dispute took place within Lee County, Florida.

9. Jurisdiction is proper within the Middle District of Florida pursuant to 28 U.S.C. §§ 1331 and 1337.

10. Venue is proper within the Middle District of Florida pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

11. Mr. Silva is a disabled military veteran who resides in Lee County, Florida.

12. During all material times hereto, Mr. Silva has suffered from a traumatic brain injury, post-traumatic stress disorder ("PTSD"), and chronic and acute back pain, which substantially limit his ability to walk. Mr. Silva also has Neuropathy in his left hand and has had surgeries performed on both of his ankles which further limits his mobility. These conditions individually and collectively constitute a bona fide disability under the ADA, as Mr. Silva is physically impaired and his major life activities are substantially limited because of his physical impairment.

13. Mr. Silva requires the use of a walker and cane in order to mobilize himself.

14. Mr. Silva also requires the use of his service animal – an 8-year-old German Shepherd dog named Sophia.

15. Sophia has been trained through Guardian Angels Medical Service Dogs, Inc. and has received over 1,500 hours of training in obedience, socialization, desensitization, public access training and advanced skill work. Sophia qualifies as a service animal under the ADA and Florida law.

16. Sophia assists Mr. Silva in walking, and further assists Mr. Silva by picking up objects that Mr. Silva drops (because Mr. Silva cannot bend down), and alerts others when Mr. Silva requires emergency assistance, and "shields" Mr. Silva from crowds by making a barrier between Mr. Silva and the crowd.

17. Service animals like Sophia are working animals intended to perform

specific tasks related to an individual's disability.

18. Mr. Silva keeps Sophia on a leash and maintains control of Sophia at all times.

19. Service animals, as defined under the ADA, may accompany their handler into public areas of accommodation, including airplanes and restaurants, without additional fees that might otherwise be associated with an accompanying animal companion.

20. Under the ADA, a "service animal" is an animal trained to do work or perform tasks for an individual with a disability.

21. The ADA does not limit the tasks a service animal may perform.

22. The ADA specifically permits service animals such as Sophia to help individuals with physical, psychiatric and neurological disabilities. *See* 28 C.F.R. § 36.104; 28 C.F.R. § 35.104.

**DEFENDANT DENIES MR. SILVA PUBLIC ACCOMODATIONS**

23. On April 7, 2021, Mr. Silva had an endoscopic procedure scheduled at the subject property.

24. Prior to Mr. Silva's arrival, he advised Defendant that he would be accompanied by his caretaker and service animal for his procedure.

25. However, when Mr. Silva arrived at the subject property on April 7, 2021, Defendant refused to let Mr. Silva's service animal accompany him to Defendant's waiting room.

26. Defendant's ban on service animals prevents Mr. Silva and other disabled

individuals who require the use of a service animal from accessing and enjoying a place of public accommodations.

27. Defendant's ban on service animals violates federal regulations promulgated in connection to the ADA, which state the following:

> Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability

28 C.F.R. § 36.302(c)(1).

28. When Mr. Silva visited the subject property on April 7, 2021, Mr. Silva's service animal was not out of control. Furthermore, Mr. Silva's service animal is rigorously trained and is housebroken.

29. Defendant has denied Mr. Silva's right to bring Sophia, his service animal, to places of public accommodation owned or operated by Defendant.

30. Furthermore, Defendant's has no legitimate or lawful reason for refusing to allow Sophia in its waiting room.

31. Mr. Silva's service animal did not have COVID-19 when he visited the subject property on April 7, 2021.[1]

32. Mr. Silva needs medical procedures offered by Defendant at its subject property and intends on returning as soon as Defendant changes its unlawful policy and allows Mr. Silva to visit with his service animal.

---

[1] According to the Centers for Disease Control and Prevention ("CDC"), "the risk of animals spreading COVID-19 to humans is considered to be low." https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/animals.html (last visited April 7, 2021).

## **COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

33. Mr. Silva hereby re-alleges and re-avers Paragraphs 1 through 32 as though fully set forth herein.

34. During all times material hereto, Mr. Silva was disabled, and therefore was a qualified individual under the ADA.

35. Defendant's ban on service animals at the subject property is an illegal policy or practice under the ADA.

36. Mr. Silva and Sophia do not present a bona fide direct threat to the health or safety of others.

37. Mr. Silva has suffered from irreparable harm because Defendant deprived him of his federal statutory right against discrimination in a place of public accommodations. More specifically, Defendant blocked his access to the subject property because he is disabled and cannot enter without his service animal.

38. Mr. Silva has no adequate remedy at law.

39. As a result, Mr. Silva suffered and will continue to suffer damages, and is entitled to an award of all relief available under the ADA, including immediate injunctive relief, and all attorney's fees and costs.

WHEREFORE, Plaintiff, CESAR SILVA, demands judgment be entered in his favor against Defendant, SURGERY CENTRE OF SW FLORIDA, LLC, d/b/a CAPE HEALTH SURGERY CENTER, for violations of the Americans with Disabilities Act, and seeks an award including, but not limited to: (a) injunctive relief against the Defendant, its agents and employees, from discriminating against Mr. Silva

and similarly situated disabled individuals; (b) requiring Defendant to immediately allow Mr. Silva to visit the subject property with his service animal; (c) reasonable attorney's fees and costs, and any other relief as this Court may deem just and appropriate under the circumstances.

Dated this 12th day of April 2021.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS – JORDAN RICHARDS, PLLC**
805 Broward Blvd. Suite 301
Fort Lauderdale, Florida 33301
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards, Esquire*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
JAKE BLUMSTIEN, ESQUIRE
Florida Bar No. 1017746
jordan@jordanrichardspllc.com
melissa@jordanrichardspllc.com
jake@jordanrichardspllc.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on April 12, 2021.

By: */s/ Jordan Richards, Esquire*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST: